IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| ROBERT PLAYFORD, derivatively, on behalf of Colonial BancGroup, Inc., | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:09cv182-MHT |
| | ) | (WO) |
| ROBERT E. LOWDER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

Plaintiff Robert Playford has filed this shareholder-derivative suit on behalf of Colonial BancGroup, Inc., charging that the defendants, certain officers and directors of Colonial, violated Delaware state law when they breached their fiduciary duties to the company and the shareholders, abused their control of the company, committed gross mismanagement and wasted corporate assets. The defendants are also sued for contribution and indemnification and for unjust

enrichment.   Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(1) (diversity of citizenship).

This case is now before the court on the defendants' motion to dismiss in which they contend that Playford has failed to meet Fed. R. Civ. P. 23.1's 'demand' requirement.   For the reasons that follow, that motion will be granted.


## I.  THE DEMAND REQUIREMENT

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Generally, to survive a dismissal motion, a complaint need not contain "detailed factual allegations," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), but "only enough facts to state a claim to relief that is plausible on its face." <u>Id</u>. at 570.  However, in a shareholder-derivative action, there is also the so-called 'demand' requirement: the complaint must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3).

## II. BACKGROUND

The "Substantive Allegations" section of Playford's complaint consists primarily of a series of press releases, issued between January 2008 and December 2008, which frequently quote defendant Robert

3

E. Lowder (the Chairman, CEO, and President of Colonial). Generally, Playford offers little context or comment on these statements; they are simply reprinted in the complaint, as if their relevance or thrust spoke for itself. Playford does, however, address one press statement in much greater detail. Made on December 2, 2008, the statement quoted Lowder and announced that Colonial had been given "preliminary approval" by the Federal Government to receive $ 550 million in funding from the Troubled Asset Recovery Program (TARP). Although the statement asserted that this funding was "subject to certain conditions and the execution of definitive agreements," it failed to identify one significant condition: that Colonial would need to raise $ 300 million of its own equity before it could receive the TARP funding. Colonial did not reveal this specific requirement until January 27, 2009, when it released its fourth-quarter earning report. The

following day, Colonial's price fell from $ 1.58 to 85¢ per share.

Playford alleges that the individual defendants in this action withheld the information concerning the $ 300 million and engaged in other misrepresentations and failures of oversight particularly related to Colonial's mortgage-related exposure, giving rise to claims for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment.

## III. DISCUSSION

The parties concede that the complaint must comply with the procedural demand requirement as set forth above of Federal Rule of Civil Procedure 23.1 and with the substantive demand requirements of Delaware State Law.  See Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 95-96, 101-103 (1991) (addressing demand futility and clarifying that "federal courts should

incorporate state law as the federal rule of decision unless application of the particular state law in question would frustrate specific objectives of the federal programs") (internal quotation marks omitted); see also Stepak v. Addison, 20 F.3d 398, 402 (11th Cir. 1994) ("Because Southern is a Delaware corporation, Delaware law governs the extent of the demand requirement and the circumstances under which Stepak may proceed derivatively notwithstanding the outside directors' refusal of his demand.").

"A cardinal precept of the General Corporation Law of the State of Delaware is that directors rather than shareholders, manage the business affairs of the corporation." Stepak, 20 F.3d at 402 (quoting Aronson v. Lewis, 473 A.2d 805, 811 (Del. Supr. 1984)). Because shareholder-derivative suits encroach upon this authority, federal and Delaware law require an aggrieved shareholder to demand that the board take

6

action before she brings suit.   Id.; see also   Del.
Ch. R. 23.1; Fed. R. Civ. P. 23.1.

However, a plaintiff may be excused for failing to
make a demand if she can show that a demand for action
would have been futile.  To do so, the "particularized
factual allegations of [the] derivative stockholder
complaint [must] create a reasonable doubt that, as of
the time the complaint is filed, the board of
directors could have properly exercised its
independent and disinterested business judgment in
responding to a demand." Rales v. Blasband, 634 A.2d
927, 934 (Del. Supr. 1993); accord In re Coca-Cola
Enters. Deriv. Litig., 478 F. Supp. 2d 1369, 1374
(N.D. Ga. 2007) (Thrash, J.), aff'd, 269 Fed. Appx.
888 (11th 2008).[1]

_____

1. The Delaware Supreme Court has established two
approaches to demand-futility cases.  The original
test, established in Aronson, has two parts, asking
"whether, under the particularized facts alleged, a
reasonable doubt is created that: (1) the directors
(continued...)

7

While the requirement to create a "reasonable doubt" may seem gentle enough, Rule 23.1 intentionally presents significant hurdles.  The Delaware Supreme Court has clarified that pleadings "are held to a

_____

(...continued)

are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." 473 A.2d at 814. In Rales, the Delaware Supreme Court recognized that not all actions "fall into the paradigm addressed by Aronson and its progeny." 634 A.2d at 933.  The court explained that, "Where there is no conscious decision by directors to act or refrain from acting, the business judgment rule has no application." Id. For such cases, the court created the single-step Rales test, in which the only inquiry is "whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." Id. at 934.

The Rales approach is more appropriate in the case at hand.  Playford alleges a failures to act rather than any conscious, inappropriate "transaction," decision, or self-dealing by the board.  In fact, Playford's own complaint approaches the problem from this perspective.  Although he advocates for the Aronson test in his opposition brief, he explicitly addresses only the first prong of that test.  As such, he effectively uses the Rales test.

8

higher standard under Rule 23.1 than under the permissive notice pleading standard under Court of Chancery Rule 8(a)." In re Citigroup Inc. Share. Deriv. Litig., 964 A.2d 106, 120 (Del. Supr. 2009). The pleadings concerning failure to make a demand "must comply with 'stringent requirements of factual particularity' and set forth 'particularized factual statements that are essential to the claim.'" Id. A plaintiff must plead particularized facts showing that a majority of the members of the board were either interested or lacked independence, Aronson, 473 A.2d at 817, and these facts must be pled as to "each defendant." Wood v. Baum, 953 A.2d 136, 142 (Del. Supr. 2008).

Generally speaking, a director is interested where that director "will receive a personal financial benefit from a transaction that is not equally shared by the stockholders" or "where a corporate decision will have a materially detrimental impact on a

9

director, but not on the corporation and the
stockholders." <u>Rales</u>, 634 A.2d at 936.  A director
lacks independence where her decisions are not "based
on the corporate merits of the subject before the
board" but rather on "extraneous considerations or
influences." <u>Aronson</u>, 473 A.2d at 816.


## A. Board Interest

Playford makes four arguments as to why Colonial's
board should be considered either interested or
lacking independence.  His first argument, one
commonly advanced in such cases, is that the members
of the board are "interested" because they are named
in this lawsuit itself.  Certainly, exposure to
personal liability would put a director in a different
position from that of the corporation or the
shareholders, but this somewhat tautological argument
has been significantly limited by Delaware courts.
<u>See</u> <u>Guttman v. Huang</u>, 823 A.2d 492, 500 (Del. Ch.

2003) ("If the legal rule was that demand was excused whenever, by mere notice pleading, the plaintiffs could state a breach of fiduciary duty claim against a majority of the board, the demand requirement of the law would be weakened and the settlement value of so-called 'strike suits' would greatly increase."). "[T]he mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors." Aronson, 473 A.2d at 815.  Instead, the plaintiff must show "a substantial likelihood of director liability."  Id.

To show a substantial likelihood of liability on these particular claims, however, Playford must surmount yet another obstacle, as Colonial's charter has an exculpatory clause protecting directors from liability for the breach of the duty of care.  See In re Coca-Cola Enters. Deriv. Litig., 478 F. Supp. 2d 1369 at 1374-75 ("In the event that the charter

11

insulates the directors from liability for breaches of due care, then a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors on particularized facts."); see also Wood, 953 A.2d at 141 ("Where, as here, directors are exculpated from liability except for claims based on 'fraudulent,' 'illegal' or 'bad faith' conduct, a plaintiff must also plead particularized facts that demonstrate that the directors acted with scienter, i.e., that they had 'actual or constructive knowledge' that their conduct was legally improper.").

Playford's complaint first asserts that, "Each of the director defendants face a substantial likelihood of liability ... because of their failure, as a director, to assure that reliable systems of financial controls were adequate and functioning to prevent the Company from improperly reporting its loan reserves and goodwill." Compl. at 29-30. Showing a

substantial likelihood of liability on such a theory
is a tall order.  In fact, the Delaware Supreme Court
has described such claims, based on oversight failures
rather than self-dealing or other conflicts of
interest, as "possibly the most difficult theory in
corporation law upon which a plaintiff might hope to
win a judgment."  Stone ex rel. AmSouth Bancorp. v.
Ritter, 911 A.2d 362, 373 (Del. Supr. 2006) (quoting
In re Caremark Int'l Inc. Deriv. Litig., 698 A.2d 959,
968 (Del. Ch. 1996)).  "[T]he necessary conditions
predicate for director oversight liability [are]: (a)
the directors utterly failed to implement any
reporting or information system or controls; or (b)
having implemented such a system or controls,
consciously failed to monitor or oversee its
operations thus disabling themselves from being
informed of risks or problems requiring their
attention."  Stone, 911 A.2d at 373.  The Delaware
Supreme Court continued that, "In either case,

imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations." Id.

Ultimately, this claim fails to overcome the many obstacles laid before it.  To begin, there is nothing very "particularized" about Playford's factual allegations.  He does not allege any facts suggesting that the board "utterly failed" to implement controls nor does he describe the controls Colonial did have. As such, he does not suggest how the controls were insufficient; how the board should have overseen matters differently; or how individual defendants were involved in any alleged failures.  Even more, Playford fails to provide any particularized facts suggesting the directors knew they were failing to discharge their oversight duties or that they consciously disregarded such duties.  See Stone, 911 A.2d at 373 (dismissing complaint because it failed to show that defendants were aware that the companies internal

14

controls were inadequate or could lead to illegal activity).  In the end, this argument is insufficient to excuse demand.

Playford next argues that the majority of the board members were subject to a substantial likelihood of liability because the board approved a series of allegedly false and misleading statements concerning the financial health of the company, including the December press release that failed to detail the prerequisites necessary for receipt of TARP monies. Once again, the complaint fails to plead facts with sufficient particularity. Specifically, the complaint fails to allege particularized facts suggesting that any members of the board, other than Lowder, were involved in the release of any of the statements, let alone that a majority of the board had knowledge of the falsity of the information contained in those statements. See Wood, 953 A.2d at 141 ("Delaware law on this point is clear: board approval of a

transaction, even one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors."); see also In re Citigroup, 964 A.2d at 133 n.88 (Del. Ch. 2003) (explaining that simply "pleading that director defendants 'caused' or 'caused or allowed' the Company to issue certain statements is not sufficient particularized pleading to excuse demand under Rule 23.1."). As such, Playford's second argument also fails to excuse demand.

Playford's third argument is that certain board members faced a substantial likelihood of liability because they served on either the auditing committee or the compensation committee, through which they knew or should have known that certain public statements were false and misleading. This argument has also been routinely rejected by Delaware courts. See Wood, 953 A.2d at 142 ("Plaintiff also asserts that

16

membership on the Audit Committee is a sufficient basis to infer the requisite scienter. That assertion is contrary to well-settled Delaware law."); see also Rattner v. Bidzos, 2003 WL 22284323, at *12-13 (Del. Ch. Sept. 30, 2003) (dismissing complaint, noting that "conspicuously absent from any of the Amended Complaint's allegations are particularized facts regarding the Company's internal financial controls during the Relevant Period, notably the actions and practices of [the company's] audit committee" and "any facts regarding the Board's involvement in the preparation of the financial statements and the release of financial information to the market."). Therefore, Playford's third argument fails to excuse demand.

## B. Board Independence

As explained above, to be independent a director's decision must be "based on the corporate merits of the

17

subject before the board rather than extraneous considerations or influences." <u>Aronson</u>, 473 A.2d at 816.  Therefore, to support his claim that the board lacked independence, Playford must allege particularized facts showing that a majority of the board members were unable to make decisions in the appropriate manner.[2]

Playford alleges that certain board members lack independence because they all have significant ties to Auburn University.  He points out, for example, that defendants Milton McGregor and James Rane are members of the university's board of trustees and serve on several university committees and that defendant William Powell, III, received his Ph.D. from the

_____

2.  From the outset, Colonial concedes that four members of its board, Lowder, John C.H. Miller, Jr., John Ed Mathison, and Patrick F. Dye, are not independent.  Playford, therefore, must only demonstrate that four more board members also lack independence, such that eight of the 15 members, a majority, would lack independence.

university and defendant Robert Craft donated $ 25,000 to the university in 2007. Playford concludes that, because seven of the 15 board members have "intimate" ties to Auburn University, their "entangling professional, personal and business relationships" prevent them from having "sufficient independence to render a disinterested decision on whether to pursue the Derivative Claims on behalf of the Company." Compl. at 37.

Playford's complaint, however, sheds no light on how or why ties to Auburn University, whether "intimate" or not, undermine the directors' ability to make an independent or disinterested decision regarding any demand he may have made in this case. Playford does not highlight any conflict between the interests of Auburn University and Colonial BancGroup such that the directors' relationship to the university might seem inappropriate. Only one of the directors, Patrick F. Dye, is employed by the

university, and, while the others make donations to the university and serve the university, they do not receive money from it, nor do they appear beholden to it.[3]   This claim simply has not been explained or

---

3. Playford cites to several cases supporting the general idea that "philanthropic relationships with institutions may give rise to questions about a director's independence." Opp. M. Dismiss at 10. But, these cases are easily distinguished from the instant situation, for each involved employees of the universities lacking independence from another director or directors who donated significant funds to that organization. See, e.g., In re Limited, Inc., 2002 WL 537692 (Del. Ch. March 27, 2002) (involving President of Brown University seeking and receiving contributions from another board member); In re Oracle Corp. Deriv. Litig., 824 A.2d 917, 944 (Del. Ch. 2003) (professors at Stanford University not considered independent from "extremely generous and influential" Stanford alumnus also serving on the board). In the case at hand, only defendant Dye is an employee of Auburn University. Even if the reasoning of these cases were extended to include non-employee members of the university's board of trustees, the allegations would still fail to capture a majority of Colonial's board of directors.

supported; it is, therefore, insufficient to excuse demand.[4]

Finally, Playford asserts that the board lacks independence because several of its members have contributed to Colonial's Federal Political Action Committee (PAC), which lobbies and provides contributions to politicians in Alabama and other areas where Colonial possesses a "business interest." Compl. at 38.   Once again, Playford's complaint is sorely lacking in detail.   Even more, the complaint does not explain, nor is it apparent, how these

---

4. In fact, Playford essentially concedes that this claim is meritless in his Opposition to the Motion to Dismiss.  He argues that, "Defendants have set up a proverbial 'straw man' with respect to the Defendants' ties to Auburn University and have completely ignored Plaintiff's allegations with respect to the political lobbying activities engaged in by Defendants through the Colonial BancGroup Inc. Federal PAC."  Opp. M. Dismiss at 9. If anyone set up this "straw man," however, it was Playford himself, who spent more lines of the complaint advancing his argument about Auburn University than he did addressing his PAC claims.

allegations suggest a lack of independence.[5]  The PAC
is designed to serve Colonial's business interests;
Playford concedes this point.  Contributions to the
PAC suggest the board members are invested in the
success of the company; their attendance at board
meetings suggests the same thing, but it does not
suggest that they have conflicted interests or lack
independence.

**** 

   For the reasons set forth above, the court finds
that Playford has not pled the required particularized
facts creating a reasonable doubt as to the
independence or disinterestedness of Colonial's board

_____

   5.  Playford's opposition to the dismissal motion
also fails to identify a single case in which
contributions to a political action committee, or
similar organization, have been held to demonstrate a
lack of independence.

of directors.   His failure to make a demand on the

board is therefore not excused.[6]   Accordingly, an

_____

6. While Playford, at the end of his brief, suggested that the court allow him to amend his complaint, he has not filed a motion to amend nor has he explained how an amended complaint would cure the defects identified by the court.   Therefore, the court, in its opinion and accompanying judgment, has not addressed the issue of leave to amend.   See Ferrell v. Durbin, 311 Fed. Appx. 253, 259 (11th Cir. 2009) (determining that district court not required to grant leave to amend sua sponte where no motion to amend was filed and plaintiffs made only "a cursory and conditional request to amend" in their opposition to the motion to dismiss); see also Long v. Satz, 181 F.3d 1275, 1279-80 (11th Cir. 1999) (holding that district court did not abuse discretion in refusing to grant plaintiff leave to amend her complaint where she failed to move for such leave).   However, if Playford believes he can correct the defects in the complaint, there is nothing to prevent him from filing a timely motion for reconsideration, as long as he attaches an amended complaint that cures the defects identified by the court.   See M.D. Ala. Local Rule 15.1 ("A party who moves to amend a pleading shall attach the original of the amendment, and one copy, to the motion. Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must, except by leave of court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference.").

23

appropriate judgment granting the defendants' motion
to dismiss will be entered.

    DONE, this the 20th day of July, 2009.

                          <u>   /s/ Myron H. Thompson   </u>
                          UNITED STATES DISTRICT JUDGE